**FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff,**

v.

**William F. POWERS, Clarence Robinson and Shirley Robinson, Defendants.**

No. 80 C 1723.

United States District Court, N.D. Illinois, E.D.

Dec. 14, 1983.

Mark E. MacDonald, Robert J. Burson, Sidley & Austin, Chicago, Ill., Frank L. Skillern, Jr., Myers N. Fisher (FDIC), Washington, D.C., for plaintiff.

Kenneth L. Cunniff, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

GETZENDANNER, District Judge:

This action is before the court on plaintiff's motion for summary judgment against defendants, and on defendant Powers' cross-motion for summary judgment on plaintiff's claim. Jurisdiction is based on 12 U.S.C. § 1819. For the reasons stated below, the court grants plaintiff's motion as against all three defendants and denies Powers' motion.

In January 1978 Drovers National Bank of Chicago was declared insolvent. Plaintiff FDIC was appointed receiver, and as receiver it then sold Drovers' assets to the FDIC under 12 U.S.C. § 1823. At the time of the sale, Drovers' files included a document evidencing the indebtedness to Drovers of Drovers' Trust No. 74179; a document executed the same day evidencing the guarantee of that indebtedness by defendants Clarence Robinson and Shirley Robinson; documents evidencing the indebtedness to Drovers of Drovers' Trusts Nos. 805 through 844 and the Robinsons' guar-

antee of that indebtedness; and a document evidencing the guarantee of the Robinsons' obligations by defendant William F. Powers. (Metzger aff. ¶ 5.)

Based on these instruments the FDIC sues the Robinsons and Powers as guarantors. The amounts due and owing are established by the affidavit of Daniel D. Wilson, dated October 27, 1982. The defendants have not challenged these calculations. Instead, they deny that they entered into valid agreements with Drovers. The Robinsons rely on a defense of lack of consideration. Powers argues that he never agreed to guarantee the Robinsons' obligations, and that he signed the guarantee form only in blank, and for another purpose, never intending that the Robinsons would be named on the form as principals. The defenses of all three defendants are based on evidence extrinsic to the written instruments. The main issue presented by these motions is whether, as the FDIC contends, governing law bars consideration of the extrinsic evidence offered by the defendants.

The Supreme Court held long ago that reliance on state law may be inadequate to protect the federal interests implicated when the FDIC purchases a bank's assets. In the absence of a governing federal statute, the Supreme Court recognized a body of federal common law governing the FDIC's rights in purchased assets, and in particular the Supreme Court applied a rule barring defenses based on unwritten agreements. *D'Oench, Duhme & Co. v. FDIC,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942). Thereafter, Congress legislated on the subject, enacting what is codified at 12 U.S.C. § 1823(e):

No agreement which tends to diminish or defeat the right, title or interest of the [Federal Deposit Insurance] Corporation in any asset acquired by it under this section, either as security for a loan or by purchase, shall be valid against the Corporation unless such agreement (1) shall be in writing, (2) shall have been executed by the bank and the person or persons claiming an adverse interest

thereunder, including the obligor, contemporaneously with the acquisition of the asset by the bank, (3) shall have been approved by the board of directors of the bank or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) shall have been, continuously, from the time of its execution, an official record of the bank.

It is clear that both the rule stated in *D'Oench* and § 1823(e) are likely to produce harsh results in some cases. Agreements that would be valid and binding as between the parties or as against third parties may be invalid as against the FDIC. To resist summary judgment, therefore, the defendants need do more than simply raise a genuine fact issue with respect to their defenses; they also must show, by summary judgment standards, that their defenses may fall outside the scope of *D'Oench* and § 1823(e).

■ The Robinsons have not articulated their defense very clearly. On this motion they do state that they "have raised the defense of lack of consideration, which would invalidate the promissory notes and guarantees signed by them. Their defense is based on oral conversations between themselves and officials at Drovers." (Defendants' memo p. 3.) The written instruments do, however, contain representations that value has been received, and the loans underlying the indebtedness apparently related to a real estate project in which the Robinsons and Powers were interested. (Clarence Robinson dep. pp. 15–21; Powers dep. p. 15.) It does not appear that the Robinsons are asserting a failure to deliver some consideration bargained for and required by the terms of the written instruments, as might be provable under *Howell v. Continental Credit Corp.*, 655 F.2d 743 (7th Cir.1981), and *Riverside Park Realty v. FDIC*, 465 F.Supp. 305 (N.D.Tenn.1978). Instead, the Robinsons apparently argue that the written instruments do not reflect any binding agreement, because no consideration flowed from Drovers or to them. On this motion the Robinsons do not attempt to demonstrate that they received no

benefit; they only suggest that their defense is based on conversations with bank officials. The court holds that the Robinsons have not raised a genuine issue of fact with respect to this asserted defense.

■ Even if the Robinsons did raise a genuine issue of fact with respect to their defense, that defense would be barred by § 1823(e). Since the Robinsons have not described their defense in detail, it is hard for the court to make a determination on this point. The Robinsons have, however, presented an argument against the applicability of § 1823(e) which the court rejects as frivolous. The Robinsons' sole argument against the applicability of § 1823(e) is that none of their obligations is an "asset" within the meaning of the statute. For this argument the Robinsons cite an old Wisconsin case which holds that uncollectible loans are not assets for purposes of determining whether a bank's assets exceed its liabilities. Observing that they have refused to make payments under the guarantees, the Robinsons conclude that their facially sufficient written guarantees should not be considered assets under § 1823(e). Because of the lack of merit of this argument, and because of the Robinsons' failure to articulate more precisely the nature of their defense, the court holds that they have not raised any genuine issue of fact suggesting that they might have a valid defense not barred by § 1823(e).

Powers' defense is different from that asserted by the Robinsons, and he raises different arguments. Powers' position is that he never agreed to guarantee the Robinsons' obligations. Exhibit 5 to the Complaint is a form document, signed by Powers, guaranteeing the Robinsons' obligations to Drovers up to $2,016,000.00. At his deposition Powers acknowledged that the signature appeared to be his. (Powers dep. p. 11.) Powers maintains, however, that he occasionally gave Drovers guarantee forms signed in blank, to be used in connection with various transactions. Powers' deposition and the affidavits of Kenneth Olsen and Donald Norris tend to es-

tablish that such a blank guarantee was left in Olsen's desk when he left Drovers. Powers suggests that:

> One can only surmise how this purported guaranty was prepared, but it is not difficult to imagine the situation where an employee of a failing bank would alter or forge instruments to increase the bank's apparent net worth, in the hope of decieving [*sic*] the bank examiners and covering the bank's own irresponsible acts.

(Defendants' memo p. 7.) Powers argues that Drovers would not or could not have asked him to guarantee the Robinsons' obligations, because such a guarantee would increase Powers' obligations to Drovers beyond the legal limit. (Powers dep. pp. 23–24, 25; Norris aff. ¶ 3.) The affidavits of Kenneth Olsen, Donald Norris, and Clarence Robinson disclaim any knowledge of how the guarantee was prepared, and tend to establish that the guarantee was not executed in connection with a loan to the Robinsons. Powers points out that the guarantee form is not dated, and he also argues that "[t]he FDIC has been unable to produce a listing of this purported guaranty in the Collateral Register." (Defendants' memo p. 6.)

The FDIC notes that Powers had been president of a savings and loan association, and should have been well aware of the possible consequences of giving Drovers guarantee forms signed in blank. The FDIC also points to Powers' deposition testimony, indicating that he had a business and employment relationship with Clarence Robinson, and that he had a beneficial interest in the proceeds of the loans. (Plaintiff's memo pp. 10 n., 11 n.) Regarding Powers' argument based on the Collateral Register, the FDIC states that defendants never requested production of a collateral register during discovery, and the FDIC also states it is unaware of such a register for real estate loans, although Norris states for the defendants that there was a register for "all guarantees for loans." (Norris aff. ¶ 4.)

The FDIC's primary argument is that the defense asserted by Powers is barred by § 1823(e) and by *D'Oench*. It should be noted at the outset that the language of § 1823(e) only denies validity to certain unwritten agreements, and does not bar extrinsic proof that a written document in fact does not reflect any valid agreement. *See Gunter v. Hutcheson*, 674 F.2d 862, 867 (11th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982). The important question, then, is whether Powers' argument should be treated as an attempt to deny the existence of an agreement or as an attempt to assert a valid unwritten agreement. In *FDIC v. Webb*, 464 F.Supp. 520 (E.D.Tenn.1978), cited by the FDIC, the defendant argued that he had signed certain notes in blank, and that bank officials had filled in the blanks in a manner contrary to his oral agreement with them. Although one might characterize this defense as a challenge to the validity of the written notes, the court viewed the defense as an attempt to assert an unwritten agreement concerning the bank officials' authority to fill in the blanks. Applying § 1823(e), the court concluded: "Since the FDIC is not bound by prior oral agreements, breach of those agreements will not affect the corporation's right to recover the amount appearing on the face of the note." *Id.* at 525.

The FDIC also has produced another case using similar reasoning on similar facts. *FDIC v. Barkan*, No. 49931–GBH (N.D.Cal. May 5, 1972). In that case a defendant argued that he had signed a note in blank, and that a bank official had filled in the blanks contrary to their oral understanding. The court held that by certain acts the defendant had ratified the official's completion of the document. The court also discussed *D'Oench*, and held that the defense was barred because the FDIC could not be bound by a secret agreement. Two points should be noted concerning *Barkan*. First, the court was considering the federal common law recognized in *D'Oench*, and not the language of § 1823(e). Second, the court may have relied on a section of the Negotiable Instru-

ments Law, which governed the execution of the note. That section provided that a person in possession of an incomplete instrument had prima facie authority to complete it by filling in blanks. Since this authority arose by implication of law, the court could disregard the asserted oral agreement limiting the official's authority, without destroying the basis for the official's authority to fill in the blanks at all. The court discussed this provision before reaching the *D'Oench* issue, and it is not clear whether it was material to the court's analysis under *D'Oench*.

The court accepts the reasoning of these cases, and holds Powers' asserted defense to be barred by § 1823(e). The FDIC sues Powers on a facially sufficient written guarantee, and he wishes to defend on the basis of informal, unwritten arrangements and understandings between him and Drovers officials. These arrangements and understandings may have been convenient for the parties thereto, but they were not reflected on Drovers' records. Powers wishes ultimately to prove that no guarantee contract ever existed, but that does not change the fact that he is asserting the type of private agreement that is invalidated by § 1823(e).[1]

The court believes that Powers' arguments against the applicability of § 1823(e) are without merit. Powers makes certain arguments based on the scope of the parol evidence rule, but § 1823(e) is not merely a federal parol evidence rule. The federal statute in many ways is much broader than the parol evidence rule, and it was enacted to serve somewhat different purposes. Powers also relies on *Howell*, 655 F.2d 743, and *Riverside Park*, 465 F.Supp. 305, cited above. Those cases hold that § 1823(e) does not bar defenses based on breaches of terms appearing in the written instruments; this holding is of no help to Powers. Powers attributes to those cases the holding that § 1823(e) bars only oral agreements made after the execution of a written agreement. The court disagrees. That is not the holding of those cases, and the proposition is incorrect in any event. Additionally, Powers argues that granting "[s]ummary judgment to the plaintiff in this case, on these facts, would preclude any party from *ever* challenging the validity of a written instrument held by the FDIC under § 1823(e)." (Defendants' memo p. 7.) It is true that § 1823(e) may bar some serious defenses, but it does not preclude all challenges to written instruments. Although these questions are not before the court, the court doubts that § 1823(e) would bar Powers from proving, for instance, that his signature was forged, or that his properly completed guarantee was altered without authorization. In this case, however, Powers has acknowledged that he signed the guarantee, and that he left it blank on the basis of some arrangement with Drovers officials. The court does not believe that the present ruling will preclude all future parties from challenging the validity of written instruments.

The FDIC relies not only on § 1823(e), but also on the federal common law doctrine recognized in *D'Oench*. That doctrine seems more flexible than § 1823(e), and it has been applied to a wide range of defenses. The goal of the *D'Oench* doctrine, like that of § 1823(e), is to allow the FDIC to rely on bank records in appraising the worth and collectibility of the bank's assets. *D'Oench* has been applied to bar defenses apparently not attributable to the conduct of the defendants. *See Gunter*, 674 F.2d at 868–73 (fraud in the inducement). It is all the more appropriate to apply *D'Oench* to bar defenses arising from irregularities to which the defendant intentionally has contributed. Executing guarantees in blank is not good practice. In *D'Oench* the Supreme Court made clear the invalidity of defenses arising from de-

---

1. The court bases its ruling on what it believes to be a fair literal ruling of § 1823(e). The court is aware that § 1823(e) has been read broadly, as conferring holder-in-due-course status on the FDIC. The Court of Appeals for this Circuit has noted this broad reading, but has neither accepted nor rejected it. *See FDIC v. Lauterbach*, 626 F.2d 1327, 1330 n. 6, 1331 (7th Cir.1980).

fendants' complicity in a secret, irregular arrangement, even if the defendants' actions did not amount to fraud or illegality. 315 U.S. at 457–59, 62 S.Ct. at 679–80. Powers refers to the statement in *Howell* that *D'Oench* should not bar a defense merely because a party " 'lent herself' to an incondite business transaction." 655 F.2d at 748. That "incondite business transaction" was not, however, a secret agreement or private arrangement; the party merely had entered into a business arrangement which, though adequately documented and recorded, was poorly organized from a business standpoint. The court believes that Powers' asserted defense falls well within the rule stated in *D'Oench. See Barkan, supra.*[2]

Accordingly, the court grants the FDIC's motion for summary judgment against all three defendants. The court derives the amounts of the judgments entered herein from the uncontested affidavit of Daniel D. Wilson. As against the Robinsons the FDIC is awarded $3,505,549.75, which amount includes interest accrued through December 14, 1983. As against Powers the FDIC is awarded $2,387,159.04, which amount includes interest accrued through December 14, 1983. The court denies Powers' motion for summary judgment.

It is so ordered.

---

**2.** In applying *D'Oench* the court has one reservation, based on an issue not raised by the parties. The court questions whether resort still may be had to the particular federal common law rule applied in *D'Oench. Cf. Milwaukee v. Illinois,* 451 U.S. 304, 101 S.Ct. 1784, 68 L.Ed.2d 114 (1981) (holding that legislation had preempted federal common law of water pollution); *see also Barany v. Buller,* 670 F.2d 726, 736 (7th Cir.1982) (noting presumption that federal statutes preempt federal common law). The court has found no case discussing whether § 1823(e)

now should be given some preemptive effect, although some courts, without discussion, have continued to use *D'Oench* to bar certain defenses of which the FDIC had no actual knowledge. *E.g., Gunter, supra,* 674 F.2d at 688. In *Howell* the Seventh Circuit discussed *D'Oench* but found it inapplicable to the defense in question, without discussing any possible preemption. 655 F.2d 743. Because the court finds Powers' and the Robinsons' defenses barred by § 1823(e), the court need not consider this preemption question.