FEDERAL DEPOSIT INSURANCE CORPORATION, Third Party Plaintiff–Appellee,

v.

Milton A. TURNER, Third Party Defendant–Appellant.

No. 87–6076.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 13, 1988.

Decided Feb. 17, 1989.

Rehearing and Rehearing En Banc Denied April 27, 1989.

G. Wendell Thomas, Jr. (argued), Kennerly, Montgomery & Finley, Knoxville, Tenn., for third party defendant-appellant.

Michael Tucci (argued), F.D.I.C.—Legal Dept., Knoxville, Tenn., for third party plaintiff-appellee.

Before MERRITT and RYAN, Circuit Judges; and WALINSKI, Senior District Judge.*

WALINSKI, Senior District Judge.

This cause is before the Court on third-party defendant, Milton A. Turner's, appeal from the judgment, following a bench trial, of the United States District Court of the Eastern Division of Tennessee, Northern Division.

The present appeal involves a continuing guaranty in the amount of $2,141,270.91, executed by Milton A. Turner to the United American Bank in Knoxville. The Federal Deposit Insurance Corporation (hereinafter "FDIC"), in its corporate capacity, acquired the guaranty and sued to compel its collec-

* The Honorable Nicholas J. Walinski, United States Senior District Judge, for the Northern District of Ohio, sitting by designation.

tion. At trial, Mr. Turner raised a number of defenses to enforcement, including fraud in the factum and material alteration. After trial, the District Judge granted judgment in favor of the FDIC. Mr. Turner now appeals, claiming error in the District Court's finding 1) that Mr. Turner's execution of a guaranty containing blanks bars him from asserting a subsequent material alteration of that form as a defense; 2) that Mr. Turner lent himself to a transaction likely to mislead banking authorities; and 3) that Mr. Turner was negligent in not demanding that the guaranty be returned to him or released in writing once he learned of its existence. We conclude that Mr. Turner was defrauded and is not barred from asserting that defense in order to estop the FDIC from enforcing his guaranty. Therefore, the judgment of the district court will be reversed.

## I.

In early 1980, third-party defendant Milton A. Turner (hereinafter "Turner") and companies he controlled were makers on a number of promissory notes held by the United American Bank in Knoxville (hereinafter "UAB–Knoxville"). Jacob H. Butcher (hereinafter "Butcher") was the president and chief executive officer of UAB–Knoxville. On or about June 20, 1980, Butcher contacted Turner to inform him that UAB–Knoxville was being audited. He asked Turner to execute a continuing guaranty to place in the loan files for one of the Turner controlled entities. Turner agreed to meet Butcher at a local airport.

While at the airport, Butcher gave Turner a "continuing guaranty" form. The guaranty left two blanks, one for the name of the debtor and one for the amount of the guaranty. Turner signed the form and returned it without filling in the blanks.

Consequently, the guaranty was completed by an unknown person. The name Lovell Road Properties Limited Partnership (hereinafter "Lovell Road") was named as the debtor. The amount was filled in at $2,141,270.91. Last, the name United Bank in Knoxville, which was printed on the form, was obliterated with correction fluid,

in two places, and replaced by City and County Bank of Knox County (hereinafter "CCB–Knoxville").

Lovell Road's partners included Roger M. Moore and Butcher. Mr. Moore was a general partner owning 20%, while Butcher was a limited partner owning 80%. Turner had no ownership interest in Lovell Road. He had in the past, however, done some consulting work for the partnership. Furthermore, the trial court determined that Turner had no knowledge that Butcher intended to use his guaranty to secure a Lovell Road debt and not the debt of his own company. Along those lines, Turner was not aware that the bank name would be modified to read CCB–Knoxville. While neither Butcher nor Turner were involved with CCB–Knoxville, Jacob Butcher's brother, C.H. Butcher, was part owner of that bank.

Late in 1981, Turner applied for a loan at CCB–Knoxville. At that time Steve Hagood, president of the bank, told him that his loan request would be denied because he was over the legal lending limit. Mr. Hagood further informed Turner that CCB–Knoxville held the continuing guaranty for Lovell Road Properties. Turner expressed his ignorance of the guaranty and told Mr. Hagood he was not involved with Lovell Road. Mr. Hagood assured Turner he would "look into" the matter.

Subsequently, Mr. Hagood told Turner an error had occurred and that he could remove the guaranty from the files only if Turner wrote a letter requesting removal. On November 24, 1981, Turner signed and mailed the following letter to Mr. Hagood.

Regarding: Lovell Road Properties

Dear Steve:

Please be advised that we are no longer involved in the above captioned matter. It is our understanding that our personal guaranty in this matter is cancelled and of no further force and effect. We appreciate your attention to this detail.

Sincerely,

M.A. Turner

(Letter from M.A. Turner to Steve Hagood, Nov. 24, 1981).

Shortly thereafter, Turner asked Mr. Hagood about the status of the guaranty. He requested that either it be returned to him or his signature be torn off the page. Mr. Hagood assured Turner that the guaranty had been removed from the files and destroyed. In addition, Mr. Hagood informed Turner that his loan request could now be approved. Mr. Hagood also sent letters to the other banks involved with Lovell Road telling them that CCB–Knoxville was releasing Turner from the guaranty.

On May 27, 1983, CCB–Knoxville was declared insolvent by the Commissioner of Financial Institutions for the State of Tennessee. The FDIC was eventually appointed as receiver and entered into a purchase and assumption transaction with the FDIC, in its corporate capacity, and CCB–Knoxville. As a result, the FDIC acquired the Lovell Road notes and guaranty, including Turner's altered guaranty and his November 24th letter.

## II.

As a general rule, both federal and state law apply where the FDIC acquires a bank's assets in a purchase and assumption transaction. *See Gunter v. Hutcheson,* 674 F.2d 862, 865–66 (11th Cir.1982) (description of purchase and assumption transaction). However, where state law contradicts federal law, the federal law dominates. *D'Oench, Duhme and Co. v. FDIC,* 315 U.S. 447, 473–74, 62 S.Ct. 676, 686–87, 86 L.Ed. 956 (1942) (Jackson, J., concurring); *FDIC v. Wood,* 758 F.2d 156 (6th Cir.1985).

Because purchase and assumption transactions benefit depositors more than other methods of liquidating bank assets after bank failures, this Circuit has held that the FDIC may acquire the same rights as a holder in due course when it in good faith obtains notes in a purchase and assumption transaction. *Wood,* 758 F.2d at 161; *Gilman v. FDIC,* 660 F.2d 688, 695 (6th Cir. 1981); *FDIC v. Armstrong,* 784 F.2d 741, 745 (6th Cir.1986).

In the case *sub judice,* there is no evidence to suggest that the FDIC did not receive the notes in good faith. In addi-

tion, the fact that Turner's letter and the altered guaranty were in the bank files does not render the FDIC on notice of any possible defense. *FDIC v. Morrison,* 816 F.2d 679 (6th Cir.1987). Meanwhile, Turner has not shown that the FDIC had actual notice of any defenses before the purchase and assumption transaction transpired. Therefore, we agree with the District Court, and hold that the FDIC stands in the shoes of a holder in due course.

"Personal" defenses, such as failure of consideration, are not actually defenses against the note, but stem from the actual transaction. As such, these are allowed as defenses only against the original wrongdoer. Once the note comes into the hands of a holder in due course he takes it free from all such personal defenses and claims. *Armstrong,* 784 F.2d at 745; Tenn.Code Ann. § 47–3–305 (1979). However, a holder in due course remains susceptible to all "real" defenses. Real defenses include infancy, incapacity, duress, some material alterations, and real fraud. Real or essential fraud is defined as:

> such misrepresentation as has induced the party to sign the instrument with neither knowledge nor reasonable opportunity to obtain knowledge of its character or its essential terms.

Tenn.Code Ann. § 47–3–305(2)(c). The approach of the defense is that the guarantor's signature on the instrument is not effective because he didn't expect to sign such an instrument in the first place. It should be further noted that this defense is good against an instrument signed with knowledge that it is negotiable, but without knowledge of its essential terms. *Id.* § 47–3–305 comment 7.

The central issue here becomes whether Turner had a reasonable opportunity to obtain knowledge of the essential terms of the guaranty, as required by § 47–3–305. In deciding this issue all relevant factors are to be considered. These include: age, education, the party's reason to rely on the representations or to have confidence in the party making them, and the apparent necessity for acting swiftly. *Id.*

■ Turner contends that the FDIC is barred from enforcing the guaranty because he was defrauded as to its essential terms. The FDIC contends that the fraud here is not legal fraud, but at best fraud in the inducement ("fraud connected with the underlying transaction and not the nature of the document signed," Black's Law Dictionary 595 (5th Ed.1979)).

It has been held that just filling in blanks on an instrument is not fraud in the factum because the signer had an opportunity to obtain knowledge of the instrument's essential terms. *Federal Deposit Ins. Corporation v. Culver*, 640 F.Supp. 725 (D.C. Kan.1986). However, that is not the situation in the present case. Appellant, in this instance, was unaware of essential terms of the instrument. Butcher induced Turner into signing a guaranty based on misrepresentations concerning the principle maker and the holding bank. This is not merely a case of an incomplete guaranty being fraudulently completed. Butcher erased the original bank's name and inserted the name of another bank. Turner had no opportunity to know that until it inadvertently came to his attention at a much later time.

Thus, we conclude that the District Court correctly determined that Turner was defrauded as to the guaranty's essential terms. He may declare the defense of fraud in the factum under Tenn.Code Ann. § 47–3–305(2)(c) against the FDIC based on misrepresentations of Butcher as to the legal essence of the guaranty.[1]

Next we must decide whether Turner's method of execution and subsequent behavior constituted negligence which substantially contributed to the alteration. Section 47–3–406 of the Tennessee Code reads:

Any person who by his negligence substantially contributes to a material alteration of the instrument or the making of an unauthorized signature is precluded from asserting the alteration or lack of authority against a holder in due course or against a drawee or other payor who

pays the instrument in good faith and in accordance with the reasonable commercial standards of the drawee's or payor's business.

Therefore, under § 47–3–406, Turner will not be able to assert the defense of fraud in the factum if he negligently contributed to the alteration of the guaranty.

■ First, the Court will examine whether Turner's method of execution bars him from asserting the applicable defenses. Turner contends that executing the guaranty in blank did not proximately cause the alteration. The District Court found that by leaving a number of blanks Turner facilitated the alteration because the falsifier only had to white out and replace the name of the bank; the other lines could just be filled in.

We disagree. If this were a case where an unauthorized party completed a document, Turner's negligence would bar him from asserting these defenses against a holder in due course. *Holman v. Higgins*, 134 Tenn. 387, 183 S.W. 1008 (1915). However, this Court can find no facts in the record which would lead us to believe Turner was the cause of the fraud. Nor can we find any case law that would compel us to find Turner liable. Compare the altered guaranty, in this case, with what it would have been if only the blanks were filled in and the criminal character of the act is apparent, *Angle v. N.W. Mutual Life Ins. Co.*, 92 U.S. 329, 337, 23 L.Ed. 556 (1875).

■ Second, we must decide whether Turner's behavior upon learning of the fraudulent scheme constituted negligence under § 47–3–406. The District Court found in the affirmative. This Court disagrees.

Turner took action upon discovery of the alteration. He wrote a letter, as requested by Mr. Hagood, asking for the guaranty to be cancelled. The letter was followed by another inquiry. Upon learning that the guaranty was allegedly destroyed, Turner ceased his probing. While acts of appel-

---

1. Ordinarily, the maker of a note or guaranty which has been materially altered is still liable on the note under its original terms. That issue is not contested here because the FDIC is not seeking to enforce the guaranty as it was originally written.

lant may have constituted lax business practice, they did not amount to such negligence as would constitute a bar to declaring the defense of fraud in the factum. Mere laxity in the conduct of business affairs is not the degree of negligence as required in § 47–3–406, *see East Gasden Bank v. First City National Bank,* 50 Ala.App. 576, 281 So.2d 431 (1973), unless the lax conduct was the proximate cause of the loss. *Id.* The lax business practice in the case at bar was not the cause of the loss. Turner made repeated requests to have the guaranty removed from his file at CCB–Knoxville, and was finally informed orally that the guaranty had been destroyed. As much as appellees would have this Court believe that without Turner's negligence the fraudulent scheme would have been prevented, we are not convinced. This Court finds that, in light of Turner's conduct both at the time of execution and after he discovered the fraud, he is not barred by § 47–3–406 from asserting valid defenses.

■ Finally, we must decide whether Turner's behavior was likely to mislead banking authorities, thus stopping him from asserting feasible defenses.

In *D'Oench, Duhme and Co. v. FDIC,* 315 U.S. 447, 62 S.Ct. 676, the Supreme Court held that note makers would be precluded from asserting defenses against the FDIC if in completing the note the maker lent himself to a fraudulent transaction which is likely to mislead banking authorities. *Id.* This Court has had occasion many times since 1942 to revisit the *D'Oench* doctrine. In *FDIC v. Morrison,* 816 F.2d 679 (6th Cir.1987), defendants, George and Justine Dukas, were asked to sign a guaranty for their son's campaign debt. Mr. and Mrs. Dukas thereafter executed a guaranty in blank. The form was subsequently completed and the bank's name was altered. The FDIC sought to enforce the guaranty and the Dukas's defended by claiming lack of mutual assent, fraud in the inducement, material alteration, failure of consideration, and estoppel. The Court held that the Dukas's were barred from asserting the defenses because of their reckless conduct.

*Morrison* differs significantly from the present case. In *Morrison* the Court pointed out that the blanks were filled in consistent with the guaranty's intended use— to secure campaign debts. Further, no one told the defendants how the instrument would be completed, nor did they care. They merely signed a form for a specific purpose and that is the purpose for which it was used. Thus, to let the defendants avoid their obligation would have been unreasonable.

On the other hand, in the case *sub judice,* Turner's guaranty was used for an entirely unforeseen and unrelated design. He signed the document upon the urgence of his banker to secure his own debts. Ultimately it was altered, as part of a fraudulent scheme, and used to secure the debts of a company in which he had no interest. Therefore, the rationale of *Morrison* is inapplicable here.

In *FDIC v. Powers,* 576 F.Supp. 1167 (N.D.Ill.1983), the court held that any secret agreement which did not comply with 12 U.S.C. § 1823(e)[2] was unenforceable against the FDIC. In as much as *Powers* and 12 U.S.C. § 1823(e) bar defenses based on unwritten agreements, they reflect sound policy which protects the FDIC. Nevertheless, they are unfitting to the present case. Turner is not defending his position based on any oral agreement. Nor is this a case where the parties tried to

---

**2.** 12 U.S.C. § 1823(e) provides:

(e) Agreements against interests of Corporation.

No agreement which tends to diminish or defeat the right, title or interest of the corporation in any asset acquired by it under this section, either as security for a loan or by purchase, shall be valid against the corporation unless such agreement (1) shall be in writing, (2) shall have been executed by the bank and the person or persons claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the bank, (3) shall have been approved by the board of directors of the bank or its loan committee which approval shall be reflected in the minutes of said board or committee, and (4) shall have been, continuously, from the time of its execution, an official record of the bank.

intentionally mislead banking authorities by signing one thing and agreeing to another. *See FDIC v. Armstrong,* 784 F.2d at 741. There is simply no evidence available here that shows Turner and Butcher intentionally tried to mislead banking authorities. Rather, Turner is defending his position based on fraud.

Likewise, *FDIC v. Hatmaker,* 756 F.2d 34 (6th Cir.1985), does not reach the issue in the present case. There the maker was induced, by a bank officer's oral promises, to sign blank note forms. The maker was subsequently estopped from using the oral promises as a defense because it was a collateral agreement which did not meet the requirements of 12 U.S.C. § 1823(e). Thus, it was an agreement which would mislead banking authorities.

Another case the FDIC relies upon is *FDIC v. McClanahan,* 795 F.2d 512 (5th Cir.1986). Mr. McClanahan executed a note in blank. Thereafter, the bank president told McClanahan his loan would be declined. However, the president filled in the note and kept the money for himself. When defendant learned that the loan was refused he took no steps to retrieve his blank note. Further, Mr. McClanahan was aware that the bank president had a criminal record and therefore should have been more careful. The court found Mr. McClanahan "lent himself to a scheme ... whereby the banking authority ... was misled." 795 F.2d at 516–7.

Such is not the case here. First, to the extent that the perpetrator of the fraud went beyond filling in blank lines, his criminal acts are not the fault of Turner. Second, upon learning of the fraud, defendant took steps to negate the guaranty. Third, Turner, in the case *sub judice,* had no reason to distrust Mr. Butcher as did the defendant in *McClanahan.* Looking at the facts of this case, in totality, this Court does not find *McClanahan* binding.

Last, the District Court concluded that the execution of instruments in blank contributes to deceptive schemes, citing *Hatmaker,* 756 F.2d 34; *Powers,* 576 F.Supp. 1167; and *FDIC v. Associates X Limited,* 775 F.2d 152 (6th Cir.1985). As previously noted by this Court these cases are not on point. We agree that executing an instrument in blank leads to deceptive schemes. However, we do not agree that a case where blanks are filled and essential terms are erased is the same as a case where only blanks are completed. Nor do we feel that by holding Turner liable we would be furthering the policies laid down in *D'Oench.* In order to encourage the FDIC to purchase banks our courts and congress have afforded then certain privileges. However, these do not include holding a party liable who was not a part of or responsible for a fraudulent scheme.

In conclusion, we agree with the District Court's finding that Turner was defrauded as to the guaranty's essential terms. But we hold the District Court's finding that Turner's negligence substantially contributed to the fraud and that Turner's actions misled banking authorities to be clearly erroneous. Moreover, we hold the District Court's finding that Turner's behavior upon learning of the fraudulent note constituted additional negligence was clearly erroneous. The decision of the District Court is reversed.

RYAN, Circuit Judge, dissenting.

I agree that under Tenn.Code Ann. § 47–3–305(2)(c) Turner may establish a "real" defense of fraud in the factum due to the alteration resulting from the "whiting out" of United American Bank in Knoxville as creditor on the guaranty, and the substitution of City and County Bank of Knox County. However, I differ with the majority in its analysis of Turner's entitlement to assert a defense under Tenn.Code Ann. § 47–3–406. Because I conclude that the district court's finding that Turner's negligence in executing the guaranty in blank substantially contributed to the alteration of the guaranty was not clearly erroneous, I would hold that under Tenn.Code Ann. § 47–3–406 Turner should be precluded from asserting the defense of alteration.

Neither Turner nor the majority seriously contend that Turner's execution of the guaranty in blank was not negligent. The majority's holding that § 47–3–406 is not

applicable is based on its observation that it "can find no facts in the record which would lead [it] to believe that Turner was *the cause* of the fraud." (Emphasis added.)

The majority takes an inappropriately narrow view of the causation requirement of § 47–3–406. Section 47–3–406 is entitled "Negligence *contributing to* alteration or unauthorized signature" (emphasis added), and it plainly provides that it applies to "[a]ny person who by his negligence *substantially contributes to* a material alteration" (emphasis added). Comment 1 to § 47–3–406 states that the section is intended to follow the doctrine that "a drawer who so negligently draws an instrument as to *facilitate* its material alteration is liable to a drawee who pays the altered instrument in good faith" (emphasis added).

The district court held:

If Mr. Turner had made sure that the guaranty was completed properly, the forger's job would have been much more difficult. Not only would he have to alter the name of the bank, but he would also have to alter the identity of the debtor and possibly the amount of the guaranty. By executing the continuing guaranty in blank, Mr. Turner made the forger's job much easier.... This conduct was a proximate cause of the guaranty being misused.

In light of the broad language of causation in § 47–3–406, this finding by the district court is not clearly erroneous.

Although it might appear harsh to hold Turner liable on the fraudulently altered guaranty,

[t]he equitable maxim that where one of two innocent persons must suffer by reason of the fraud of a third person, the party whose act, omission, or negligence enabled the third person to consummate the fraud should bear the loss, is a fundamental theory upon which the Uniform Commercial Code rests.

*Brownlow v. Aman*, 740 F.2d 1476, 1489 (10th Cir.1984). The loss in this case should fall upon Turner, whose execution of the guaranty in blank substantially contributed to and facilitated its alteration, rather than upon the FDIC, which has a status akin to a holder in due course.

I would affirm the judgment of the district court.[1]

---

**1.** I also differ with the majority's holding with regard to the *D'Oench* estoppel doctrine. Based on *D'Oench* and progeny, Turner's execution of the guaranty in blank lent himself to a transaction likely to misleading banking authorities— indeed the majority acknowledges that such an act "leads to deceptive schemes." *See Federal Deposit Insurance Corp. v. Morrison*, 816 F.2d 679 (6th Cir.1987) (*per curiam*); *Federal Deposit Insurance Corp. v. Investors Associates X., Ltd.*, 775 F.2d 152 (6th Cir.1985). However, the *D'Oench* doctrine only precludes assertion of "personal" defenses; therefore, because Turner's defense is a "real" defense, the *D'Oench* doctrine would not preclude its assertion.