**FEDERAL DEPOSIT INSURANCE CORPORATION, in its Corporate Capacity, Plaintiff,**

v.

**James S. "Butch" FULCHER and Royal Caswell, Defendants.**

**No. MO–85–CA–061.**

United States District Court,
W.D. Texas,
Midland-Odessa Division.

Nov. 12, 1985.

---

John McChristian, Jr., Midland, Tex., for plaintiff.

Tom Hirsch, Odessa, Tex., for defendants.

## ORDER

BUNTON, District Judge.

The parties have stipulated to the relevant facts and agreed to submit all matters to the Court for determination. After reviewing the pleadings, exhibits, depositions and briefs of counsel, the Court is of the opinion that the FEDERAL DEPOSIT INSURANCE CORPORATION's ("FDIC") motion for summary judgment is meritorious and should be granted.

## I.

### Facts

Defendant JAMES S. "BUTCH" FULCHER ("FULCHER") executed a promissory note payable to the Metro Bank in the amount of $85,000 secured by a mortgage on a home. Defendant ROYAL CASWELL ("CASWELL") executed and delivered to the Metro Bank a letter of guaranty by which he guaranteed FULCHER's indebtedness. Around May of 1983, Metro Bank accepted payment of approximately $55,000 on the note; and, according to CASWELL, at this time the president of Metro Bank, Mr. Eddie Thomas, orally assured him (CASWELL) that the guaranty would be destroyed:

Q: What discussions did you have with him about any limitations on the guaranty?

A: Eddie was going to take me off the guaranty and then work out a long-term payout with Butch because we had sold the property and it didn't bring in enough to payout the note.

Q: And when you say he was going to let you off the guaranty, do you remember what he said?

A: I said, "Eddie, what's the deal on Butch?" He said, "We're going to work out a long-term payout." And I said, "Well, I want off that guaranty. I'm fixing to bring you a check for, and I forgot how much it was at that time.

We had sold the house for something over $50,000.00, and I was bringing him—I said, "Eddie, I've got a check here for—I'm going to bring you a check for like, $50,000.00, $55,000.00, whatever it was. The bank's records

will reflect the last payment made on that. And I said, "I'm going to bring a check in to you for $50,000.00 or so." And I said, "want to get off this guaranty because I don't want to carry it on my financial statement anymore." He said, "All right, bring it on out and I'll work the deal out with Butch for a two or three year payout on the $23,-000.00 or whatever was left." And I trusted him and brought him the $55,-000.00.

Q: Did you ever receive a copy of your signed guaranty back?

A: No.

Q: Did you ever make any further inquiry about it?

A: I never even read the guaranty until after this lawsuit was filed. I never tried to get it back or anything, no, sir, I did not.

     \*     \*     \*     \*     \*     \*

Q: Any discussion that you've had with anyone that you would consider a fact that would lead you to believe or anyone else to believe that that guaranty is in any way limited?

A: Other than discussions with Eddie Thomas, that I was off of it, but other than that, no, and those would be after the note was executed in, what did I say, May of '83?

Q: yeah.

A: I never saw this note, this May '83 note, I never saw it until yesterday, but other than discussions with him, that—"Don't worry about it Cas, I took you off that guaranty." Other than that, after the fact, with the note, no.

*See* Sworn Deposition Testimony of Royal Caswell, May 7, 1985, at pp. 10–12, 13–14.

Thereafter, on May 6, 1983, FULCHER executed and delivered to Metro Bank the promissory note which is made the basis of this cause. This note extended FULCHER's indebtedness to Metro Bank.

On July 29, 1983, the State Commissioner declared Metro Bank to be insolvent and ordered the bank closed. On that date,

pursuant to 12 U.S.C. § 1821(c), the FDIC was appointed receiver for Metro.

The FDIC, acting in its Corporate Capacity, purchased from the receiver certain assets of the bank. Among the assets purchased by FDIC-Corporate were the notes and claims asserted herein. As a result, the FDIC–Corporate is now the legal owner and holder of the note executed by FULCHER and the letter of guaranty executed by CASWELL. The FDIC alleges that there exists a sum of $23,998.80 currently due and owing, plus accrued interest, on the note in question.

FULCHER testified as follows:

Q: Have you had any conversations or correspondence with Metro Bank that would in any way limit the indebtedness that is described in Deposition Exhibit Number 1?

A: How do you mean limited?

Q: That would in any way indicate that your indebtedness is not as it appears on Deposition Exhibit Number 1? That's kind of lawyer talk for, is there any reason why that is not the amount due?

A: Oh, okay. No, I believe, we were supposed to have paid down and that's what was left over and is what I wasn't able to pay.

*See* Sworn Deposition Testimony of James S. "Butch" Fulcher, May 7, 1985, at p. 11.

### II.

It appears that FULCHER admits to the debt—his only defense being an inability to repay. CASWELL likewise admits to signing the guaranty agreement to enable FULCHER to obtain the loan. The defendants contend, however, that the interest charged on the loan was usurious—that the loan was not for business purposes, and that the scope of the guaranty agreement was limited by oral representations of an agent of the failed bank.

CASWELL's contention that the president of the Metro bank orally assured him that he "was off the guaranty" is precluded by application of *D'Oench,*

*Duhme & Co. v. FDIC,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942) and 12 U.S.C. § 1823(e).

12 U.S.C. § 1823(e) provides in pertinent part as follows:

No agreement which tends to diminish or defeat the right, title or interest of the corporation in any asset acquired by it under this section, either as security for a loan or by purchase, shall be valid against the corporation unless such agreement (1) shall be in writing, (2) shall have been executed by the bank and the person or persons claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the bank, (3) shall have been approved by the board of directors of the bank or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) shall have been, continuously, from the time of its execution, an official record of the bank.

*Id; see also FDIC v. deJesus Velez,* 678 F.2d 371 (1st Cir.1982); *Chatham Ventures, Inc. v. FDIC,* 651 F.2d 355 (5th Cir. 1981); *FDIC v. Hoover-Morris Enterprises,* 642 F.2d 785 (5th Cir.1981); *FDIC v. Waldron,* 630 F.2d 239 (4th Cir.1980); *FDIC v. Powers,* 576 F.Supp. 1167 (N.D.Ill. 1983), *aff'd,* 753 F.2d 1076 (7th Cir.1984).

The purpose of Section 1823(e) has been summarized as follows:

It is clear that the quoted section operates to insure that the FDIC, when it expends monies entrusted to it to purchase assets of a closed insured bank, can rely on the bank's records and will not be risking an impairment of the assets through an agreement not contained in the bank's records.

*FDIC v. Vogel,* 437 F.Supp. 660, 663 (E.D. Wis.1977). Section 1823(e) applies when the FDIC acts in its corporate capacity, as opposed as a receiver for a closed, insured bank, *FDIC v. Godshall,* 558 F.2d 220 (4th Cir.1977), and it affords protection greater than that accorded a holder in due course under the Uniform Commercial Code. *FDIC v. Kucera Builders, Inc.,* 503

F.Supp. 967, 971 (N.D.Ga.1980). In the instant case, Section 1823(e) is applicable because the FDIC, in its corporate capacity, acquired the subject notes and guaranty as a part of the Metro Bank purchase and assumption transaction.

■ CASWELL additionally asserts that his guaranty extended only to the initial note to secure the purchase of a home. In support thereof, CASWELL alleges that the guaranty agreement was signed in blank. The FDIC has stipulated that the guaranty agreement was signed in blank. Again, this defense, being based upon oral representations made by an officer of the failed bank, is not valid against the FDIC. 576 F.Supp. 1171. Because the guaranty contains no language which might disclose the possibility of a limitation of the guaranty to one specific loan transaction, the obligations must read to cover all debts incurred by FULCHER. The FDIC is entitled to rely on the plain, unambiguous wording of the paper which it acquires in a P & A transaction.

■ In regard to the defendants' usury claim, the Court has reviewed the notes in question and the Credit Code Letter published by the Consumer Credit Commissioner of the State of Texas, which reveals interest rate ceilings in effect on the dates of maturity of the various notes. The interest rate reflected on the various notes at the date of maturity do not exceed the applicable state limits. The defendants' usury claim must fall.

### III.

This case is yet another example of innocent parties caught in the web of the failure of a federally insured bank. Because of the unique nature of the FDIC, the defenses raised by the defendants cannot be held applicable. Accordingly, the Court must grant the FDIC's motion and enter summary judgment.