**FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff,**

v.

**John W. COVER, et al., Defendants.**

No. 86–1968.

United States District Court,
D. Kansas.

March 9, 1988.

**456**

B.J. Hickert, Morrison, Hecker, Curtis, Kuder & Parrish, Wichita, Kan., and George W. Yarnevich, Kennedy, Berkley, Yarnevich & Williamson, Salina, Kan., for plaintiff.

Warren M. Wilbert, Stinson, Lasswell & Wilson, Wichita, Kan., and John F. Arens, Arens & Alexander, Fayetteville, Ark., for defendants.

## MEMORANDUM AND ORDER

CROW, District Judge.

This case is before the court on a motion styled by the FDIC as a "directed verdict." (Dk. No. 29.) The case was previously set for trial to a jury on November 9, 1987. At the chambers conference prior to jury selection on the morning of November 9, 1987, this court sustained the FDIC's "motion in limine" prohibiting defendants from mentioning or eliciting any testimony regarding any alleged oral agreements between defendants and the failed Talmage State Bank, pursuant to 12 U.S.C. § 1823(e). The effect of that ruling was essentially to preclude defendants from their anticipated defense of oral accord and satisfaction, leaving no issues for trial. The jury was released, the parties were directed to continue settlement negotiations, and the FDIC was allowed until December 10, 1987 to file a dispositive motion based upon § 1823(e). The court additionally invited defendants to brief the issue of sanctions against the FDIC for its having brought a dispositive motion on the eve of trial.

On December 10, 1987, the FDIC filed the motion currently before the court. Although the FDIC has chosen to entitle its motion as one for a "directed verdict," the court finds this characterization entirely inappropriate. A motion for directed verdict is to be made "at the close of the evidence offered by an opponent" or "at the close of all the evidence." Fed.R.Civ.P. 50(a) & (b). Additionally, no directed verdict is possible where no jury has been impaneled. In the present case, no jury selection was ever commenced and no evidence was presented by either side. The court will construe the FDIC's motion as one for summary judgment pursuant to Fed.R.Civ.P. 56.

In ruling on a motion for summary judgment, the trial court conducts a threshold inquiry of the need for a trial and grants summary judgment where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250–51, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202, 213 (1986). The court is to be concerned with the sufficiency of the evidence, not its weight. *Casper v. C.I.R.,* 805 F.2d 902, 904 (10th Cir.1986.) Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52, 106 S.Ct. at 2512, 91 L.Ed.2d at 214. There is no genuine issue for trial unless there is sufficient evidence—significantly probative or more than merely colorable—favoring the nonmoving party for a jury to return a verdict for that party. 477 U.S. at 248–50, 106 S.Ct. at 2510–11, 91 L.Ed.2d at 212. Where there is but one reasonable conclusion as to the verdict and reasonable minds would not differ as to the import of the evidence, summary judgment is appropriate. 477 U.S. at 250–51, 106 S.Ct. at 2511–12, 91 L.Ed.2d at 213.

The movant's burden under Fed.R.Civ.P. 56 is to make an initial showing of the absence of evidence to support the nonmov-

ing party's case. *Windon Third Oil and Gas v. Federal Deposit Ins.*, 805 F.2d 342, 345. (10th Cir.1986), *cert. denied*, 480 U.S. 947, 107 S.Ct. 1605, 94 L.Ed.2d 791 (1987). To show an absence of material fact, the movant must specify those portions of "the pleadings, deposition, answers to interrogatories and admissions on file, together with affidavits if any." Fed.R.Civ.P. 56(c). "[C]onclusory assertions to aver the absence of evidence remain insufficient to meet this burden." *Windon*, 805 F.2d at 345 n. 7. The opposing party may not rest upon mere allegations or denials in the pleadings but must set forth specific facts supported by the kinds of evidentiary materials listed in 56(c), which demonstrate a genuine issue remaining for trial. *Anderson*, 477 U.S. at 248–50, 106 S.Ct. at 2510–11, 91 L.Ed.2d at 213. The evidence of the nonmoving party is deemed true and all reasonable inferences are drawn in his favor. *Windon*, 805 F.2d at 346. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1." (citation omitted.) *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265, 276 (1986).

The sole issue presented in the FDIC's motion is whether the defense of oral accord and satisfaction between the debtors and the failed bank is barred by 12 U.S.C. § 1823(e). The defendants contend that the Talmage State Bank orally agreed that it would not seek any deficiency judgment against them if defendants would sell their farm machinery and equipment and apply the proceeds to their indebtedness owed the bank. Defendants subsequently liquidated their operation and applied the proceeds to their debt owed Talmage State Bank. The Bank later failed and FDIC was appointed as receiver. A purchase and assumption transaction followed, and the FDIC in its corporate capacity purchased assets that were unacceptable to the assuming bank, pursuant to 12 U.S.C. § 1823(d). The FDIC, in its corporation and receiver capacities, urges the court to affirm its ruling

that the defense of oral accord and satisfaction is barred.

Section 1823(e) provides:

No agreement which tends to diminish or defeat the right, title or interest of the Corporation *in any asset acquired by it* under this section, either as security for a loan or by purchase, shall be valid against the Corporation unless such agreement (1) shall be in writing, (2) shall have been executed by the bank and the person or persons claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the bank, (3) shall have been approved by the board of directors of the bank or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) shall have been, continuously, from the time of its execution, an official record of the bank. (Emphasis added.)

It is uncontested that the agreement upon which defendants rely is not in writing, and that defendants have failed to comply with the writing, approval, and filing requirements of § 1823(e). However, defendants assert that § 1823(e) is not applicable because no "asset" was acquired by the corporation when it purchased the failed bank's interest in September of 1987.

The term "asset" as used in § 1823(e) is not defined by statute. Although the meaning of the term may perhaps be clarified, if not expressly defined, in the Purchase and Assumption Agreement between the FDIC, as receiver, and the Abilene First National Bank, as assuming bank, or in the Contract of Sale entered into between the FDIC, as receiver, and the FDIC in its corporate capacity, neither of those documents is included in the record before this court.

The FDIC contends that the term "assets" as used in subsection (e) means "assets disclosed on the books and records of a bank which satisfy the requirements of § 1823(e). Stated otherwise, an asset reflected in the records of a bank does not cease being an asset for purposes of § 1823(e) until payment is received or an agreement complying with the require-

ments of § 1823(e) is concluded." (Dk. 30, p. 5.) Defendants do not challenge this proposed definition, except to state that "no evidence has been presented by the FDIC to prove that the notes in question were listed as assets on the books and records of the failed bank at the time the transfer to the FDIC in its corporate capacity was made." (Dk. 35, p. 4.) That factual omission by the FDIC has been remedied in its reply brief, by the attached affidavit of Ricky C. Olson, a bank liquidation specialist of the FDIC. That affidavit establishes that each of the three notes that are the subjects of this action was acquired by the FDIC in its corporate capacity from the receiver, and that such notes were reflected as assets in the loan files of the closed bank at the time of closure. (Dk. 42, Supplemental affidavit.)

The court finds that the notes in question were in the bank's active files on the date the bank closed and on the date the bank's assets were purchased by the FDIC in its corporate capacity. *See FDIC v. Venture Contractors, Inc.*, 825 F.2d 143 (7th Cir. 1987) (upholding trial court's finding that a guaranty was in an active file and thus a valid asset); *FDIC v. Powers*, 576 F.Supp. 1167, 1169 (N.D.Ill.1983) (rejecting as frivolous defendants' argument that none of their facially sufficient written guarantees was an "asset" under § 1823(e)).

Defendants additionally contend that even if their notes were reflected as assets on the bank's books, those notes ceased to be assets by virtue of the accord and satisfaction prior to the closure of the Talmage State Bank. Defendants' position finds support in *FDIC v. Nemecek*, 641 F.Supp. 740 (D.Kan.1986). In *Nemecek*, J. Kelly held that:

> ... § 1823(e) has no application to this case. The Bank and the defendants had reached an accord and satisfaction, a settlement of claims, prior to the Bank's closing. Therefore, when the F.D.I.C. purchased the Bank's assets, it could not have purchased defendants' note, as it had been previously extinguished. Sec-

tion 1823(e) applies only to assets which the FDIC *has* acquired.

641 F.Supp. at 743 (emphasis in original).

The court declines to follow the *Nemecek* holding. That rationale requires the court to, in a preliminary step, look to evidence not permitted by § 1823(e) to determine the FDIC's rights with respect to each item reflected in a failed bank's books as an asset and purchased by the corporation. Such a theory would destroy the effect and protection of § 1823(e) and hamper the FDIC's ability to follow the purchase and assumption alternative by injecting uncertainty into the valuation of assets.

The court recognizes that § 1823(e) does not apply to every inquiry concerning an asset. *FDIC v. Merchants Nat. Bank of Mobile*, 725 F.2d 634, 639 (11th Cir.1984), *cert. denied*, 469 U.S. 829, 105 S.Ct. 114, 83 L.Ed.2d 57. It does not apply when the court determines if an asset is invalid for breach of bilateral obligations contained in the asset, *see Howell v. Continental Credit Corp.*, 655 F.2d 743, 746–48 (7th Cir.1981) or for fraud, *see Langley v. FDIC*, 484 U.S. 86, ——, 108 S.Ct. 396, 402, 98 L.Ed.2d 340, 348 (1987). Nor does the statute protect the FDIC against the consequences of its own conduct with respect to the asset after acquiring it. *See FDIC v. Blue Rock Shopping Center*, 766 F.2d 744, 753 (3d Cir. 1985); *FDIC v. Harrison*, 735 F.2d 408, 412 (11th Cir.1984). In such cases a defendant may present evidence outside of the documents to establish a defense. In the present case, however defendants have failed to offer any facts which would entitle them to avoid the application of § 1823(e).

The court chooses to follow those courts which hold that § 1823(e) bars the defense of oral accord and satisfaction. *See Public Loan Co. v. FDIC*, 803 F.2d 82, 84 (3d Cir.1986) (defense of oral accord and satisfaction barred by § 1823(e) despite assertion that the full amount of the letter of credit had been previously paid); *FDIC v. General Investments, Inc.*, 522 F.Supp. 1061, 1067 (E.D.Wis.1981) (holding that parties never finalized a settlement agree-

ment, but stating that if such an oral agreement has been made, the court would find it invalid for failure to comply with § 1823(e) requirements); *FDIC v. Hoover–Morris Enterprises*, 642 F.2d 785 (5th Cir. 1981) (defense of oral accord and satisfaction could not be asserted against FDIC which brought action to recover deficiency judgment because of § 1823(e), the *D'Oench* doctrine, and failure to satisfy state law requirements of accord and satisfaction); *FDIC v. Fulcher*, 635 F.Supp. 27 (W.D.Tex.1985) (bank's oral agreement to let defendant off a guaranty upon receipt of proceeds from sale of collateral was barred by § 1823(e) and *D'Oench* doctrine even though bank had allegedly received proceeds from sale of collateral); *FDIC v. WH Venture*, No. 84–5673, slip op., 1986 WL 5919 (E.D.Pa., May 22, 1986) (stating "[c]learly defendants' affirmative defense and counterclaim based upon accord and satisfaction and novation, to the extent they do not meet the requirements of § 1823(e) are barred.")

The United States Supreme Court, in *Langley*, reviewed two of the purposes of § 1823(e):

■ One purpose of § 1823(e) is to allow federal and state bank examiners to rely on a bank's records in evaluating the worth of the bank's assets. Such evaluations are necessary when a bank is examined for fiscal soundness by state or federal authorities, see 12 USC §§ 1817(a)(2), 1820(b) [12 USCS §§ 1817(a)(2), 1820(b)], and when the FDIC is deciding whether to liquidate a failed bank, see § 1821(d), or to provide financing for purchase of its assets (and assumption of its liabilities) by another bank, see § 1823(c)(2), (4)(A). The last kind of evaluation, in particular, must be made "with great speed, usually overnight, in order to preserve the going concern value of the failed bank and avoid an interruption in baking services." Gunter v. Hutcheson, 674 F2d at 865. Neither the FDIC nor state banking authorities would be able to make reliable evaluations if bank records contained seemingly unqualified notes that are in fact subject to undisclosed conditions.

A second purpose of § 1823(e) is implicit in its requirement that the "agreement" not merely be on file in the bank's records at the time of an examination, but also have been executed and become a bank record "contemporaneously" with the making of the note and have been approved by officially recorded action of the bank's board or loan committee. These latter requirements ensure mature consideration of unusual loan transactions by senior bank officials, and prevent fraudulent insertion of new terms, with the collusion of bank employees, when a bank appears headed for failure.

98 L.Ed.2d at 347. Neither of these purposes would be fulfilled if a debtor were allowed to show, by an oral agreement not meeting the statute's requirements, that a facially unqualified note was subject to a condition such as release upon partial payment.

This holding is consistent with others in the district. *See, e.g., FDIC v. Vestring*, 620 F.Supp. 1271, 1274 (D.Kan.1985) (holding that "... any affirmative defense that flows from an oral agreement is barred by [§ 1823(e) ]"); *FDIC v. Soden*, 603 F.Supp. 629, 634–35 (D.Kan.1984) (holding oral side agreement between bank and law firm invalid under § 1823(e)). The court finds that the defense of oral accord and satisfaction is barred by § 1823(e) as to the claim brought by the FDIC in its corporate capacity.

Defendants have previously voluntarily withdrawn their counterclaims and all affirmative defenses except accord and satisfaction. (Dk. 36, p. 2.) Both parties have stipulated that if the defendants were determined to be liable, the correct amount of that liability would be $189,444.37, together with interest from and after November 9, 1987 at the contract rate, currently calculated at $49.41 per diem. (Dk. 29, p. 1; Dk. 36, p. 3.)

■ The parties have briefed the issue of equitable sanctions against the FDIC in its corporate capacity. The court expressed to the parties at the in-chambers conference on November 9, 1987 its con-

cern with the FDIC's having filed, in the form of a "motion in limine," a dispositive motion on the eve of trial. The FDIC, in both its corporate and receivership capacities, subsequently tendered a check to the clerk of this court in the amount of $751.02 as payment for the costs of impaneling a jury on November 9, 1987. (Dk. 31.) That unconditional offer was found to be appropriate and the clerk was ordered to accept the FDIC's check and to apply the proceeds as payment for the costs of impaneling a jury in this case. (Dk. 33). After reviewing the facts and arguments set forth in the parties' briefs on this issue, the court finds that no additional payment from the FDIC in the form of equitable sanctions is warranted.

IT IS THEREFORE ORDERED that the FDIC's motion for summary judgment is granted, and the FDIC in its corporate capacity is awarded $189,444.37, plus interest from and after November 9, 1987 at the rate of $49.41 per day. It is further ordered that defendants' motion for equitable sanctions against the FDIC is denied.