**PREMIER BANK, Plaintiff,**

v.

**COHEN–ESREY PROPERTIES, INC., et al., Defendants.**

**No. 93–2290–JWL.**

United States District Court, D. Kansas.

July 14, 1994.

David C. Stout, Charles S. Scott, Jr., Chionuma & Associates, P.C., Kansas City, MO, for F.D.I.C.

Richard L. Martin, Cynthia C. Dunham, Martin, Leigh & Laws, Kansas City, MO, for Premier Bank.

Greer S. Lang, Leonard B. Rose, Rose, Brouillette & Shapiro, P.C., Kansas City, KS, for defendants.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

### I. Introduction

This case involves claims brought by plaintiff Premier Bank[1] against defendants Cohen Properties, Inc., Cohen–Esrey Properties, Inc., Roger L. Cohen, David M. Lacy and William K. Stapp. The action includes claims against the corporate defendants seeking judgment for breach of payments due on a promissory note and foreclosure on mortgaged property, and claims against defendants Cohen, Lacy and Stapp for breach of Payment Guaranties executed on January 29, 1988 and October 18, 1988.

This matter is currently before the court on plaintiff's motion for summary judgment (Doc. # 80). In its motion, plaintiff seeks summary judgment on all claims against defendants. For the reasons set forth below, plaintiff's motion is granted as to the breach of contract and foreclosure claims against the corporate defendants and as to the October 18, 1988 guaranty claims against the individual defendants.[2]

Also pending before the court are defendants' motion to strike (Doc. # 100) and defendants' motion for leave to file a sur-reply (Doc. # 104). For the reasons set forth below, those motions are denied.

### II. Factual Background

#### A. Procedural Background

In order to understand how the parties arrived at their present posture in the case, a short review of the factual circumstances leading up to the filing of the case and the subsequent procedural developments in the case is necessary.

This action was originally filed by Midland Bank of Overland Park in the District Court of Johnson County, Kansas, on December 8, 1992. On March 21, 1993, the name of Midland Bank of Overland Park was changed to its former name of College Boulevard National Bank ("College Boulevard").

On April 2, 1993, the United States senior deputy comptroller for the bank's supervision policy found College Boulevard to be insolvent and appointed the FDIC as receiver. On that same date, the appointment was accepted by the FDIC. On June 28, 1993, by order of the District Court of Johnson County, Kansas, the FDIC was substituted as party plaintiff in the place of Midland Bank of Overland Park. In July, 1993, this case was removed from the District Court of Johnson County to this court.

The original petition filed in state court by Midland Bank of Overland Park asserted claims against defendant Cohen–Esrey for liability arising under a Promissory Note dated January 29, 1988 and subsequent modifications of that Promissory Note, and to foreclose the Mortgage, Security Agreement and Assignment of Rents securing the same. Liability was also asserted against defendants Cohen, Lacy and Stapp on individual payment guaranties executed on January 29, 1988.

This court issued a scheduling order on September 29, 1993. Pursuant to that order, any motions to amend the pleadings or to add parties were to be filed on or before October 29, 1993. That date came and went without any amended pleadings being filed by the parties. Meanwhile, discovery in the case continued. At a point in time after the deadline for filing amended pleadings established in the court's scheduling order had passed, the FDIC became aware that payment guaranties had been executed by defendants Cohen, Lacy and Stapp dated October 18, 1988. These new guarantees were exe-

---

1. The original loan involved in this dispute was made by College Boulevard National Bank on January 29, 1988. College Boulevard filed this action against defendants in state court. On April 2, 1993, the FDIC was appointed receiver for College Boulevard and removed the action to this court. On May 25, 1994, the loan was sold by the FDIC to Premier Bank, to whom the FDIC assigned all of its right, title and interest in the January 29, 1988 Promissory Note and all collat-

eral documents. On June 17, this court entered an order substituting Premier Bank for the FDIC as plaintiff.

2. As discussed later in this order, the court finds that the plaintiff's right of recovery under the January 29, 1988 Payment Guaranties is fully encompassed by the October 18, 1988 Payment Guaranties.

cuted concurrently with a modification of the original Promissory Note wherein the amount of indebtedness owed by Cohen–Esrey was increased to the amount of $2,100,-000.00. The FDIC subsequently located executed copies of the October 18, 1988 guaranties in the file of Kent Perry, who had been the attorney for College Boulevard in the loan transactions.

Following its discovery of the October 18, 1988 payment guaranties, the FDIC filed a motion for leave to file an amended complaint, which included a count based on those guaranties. The court took up this motion at a pre-trial conference on March 13, 1994. Following a thorough examination of the factual circumstances leading to the FDIC's filing of the motion to amend, the court determined that the FDIC should be allowed to amend their complaint pursuant to Fed. R.Civ.P. 15, and the FDIC's motion to amend was granted.

### B. The Cohen–Esrey Loan

On or about January 29, 1988, College Boulevard loaned $1,750,000.00 to Cohen Properties, Inc. ("Cohen Properties"). In consideration for that loan, Cohen Properties executed a promissory note dated January 29, 1988 to College Boulevard in writing wherein Cohen Properties promised and agreed to pay to College Boulevard the sum of $1,750,000.00, plus interest, at the contract rate stated in the promissory note. To secure the payment of the promissory note, and at the same time and as part of the same transaction, Cohen Properties[3] executed and delivered to College Boulevard a mortgage bearing the date January 29, 1988.

In mid–1988, the development plans for the real estate which originally served as security for the loan changed, and to accommodate this change, lots 3 and 4 of the development had to be replatted. Part of lot 3 was conveyed by Cohen–Esrey to 135–150 Development Company, and 135–150 Development Company conveyed part of lot 4 to Cohen–Esrey. As a result of the change in construction plans, Cohen–Esrey needed an additional $350,000.00 in construction financing from College Boulevard. On or about October 18, 1988, Cohen–Esrey and College Boulevard entered into a Modification of Promissory Note wherein the parties agreed to modify the January 29, 1988 promissory note by increasing the amount of the indebtedness owed by Cohen–Esrey to College Boulevard to the amount of $2,100,000.00.

To secure the payment of the Modification of Promissory Note, Cohen–Esrey and College Boulevard entered into a Modification of Mortgage to grant College Boulevard a security interest in the real estate corresponding to the modified development. As part of the transaction, 135–150 Development Company and Arapaho I, L.P. agreed to subordinate any interest they had in the real estate described in the Modification to the interests of College Boulevard.

After October 18, 1988, the maturity date for the loan between Cohen–Esrey and College Boulevard was extended and modified several times, with a final maturity date of November 1, 1992. Cohen–Esrey is now in default on the loan. Demand for payment has been made and refused. As of March 22, 1994, $1,482,107.10 is due in principal on the Cohen–Esrey loan and its modifications, and $295,132.61 is due in accrued interest for a total amount due of $1,777,239.71. From March 22, 1994 forward, interest is accruing at the rate of $432.281237 per day.

### C. The Payment Guaranties

In conjunction with the January 29, 1988 Cohen–Esrey loan, defendants Cohen, Lacy and Stapp each delivered executed payment guaranties to College Boulevard (the "January 29, 1988 Payment Guaranties"), which personally guaranteed payment of the January 29, 1988 Promissory Note. Additionally, as part of the modification of the original loan on October 18, 1988, defendants Cohen,

---

**3.** The borrower on the original loan was Cohen Properties, Inc. on or about May 5, 1988, Cohen Properties' name was changed to Cohen–Esrey, Inc. The court will refer to the corporate entity as Cohen–Esrey throughout this opinion. A motion to substitute C & L Properties Corp. for Cohen–Esrey as a defendant (Doc. # 99), apparently reflecting another name change, remains pending and will be ruled on shortly. If granted, future submissions in this case should reflect the substituted corporate identity in the caption and elsewhere.

Lacy and Stapp each executed new guaranties (the "October 18, 1988 Payment Guaranties") which personally guaranteed payment of the modified note. The January 29, 1988 Payment Guaranties and the October 18, 1988 Payment Guaranties contained language to the effect that the Payment Guaranties were absolute, unconditional and irrevocable. Further, pursuant to those Guaranties, the guarantors waived diligence, presentment for payment, notice of nonpayment, demand, protest and notice of acceptance.

In connection with the October 18, 1988 modification, College Boulevard returned the originals of the January 29, 1988 Payment Guaranties to defendants Cohen, Lacy and Stapp. The originals of the January 29, 1988 Payment Guaranties were returned to the defendants in exchange for their execution of the October 18, 1988 Payment Guaranties.

Currently, the FDIC has in its possession an original of the January 29, 1988 Payment Guaranty executed by Lacy.[4] The FDIC does not have possession of any originals of the January 29, 1988 Payment Guaranties for defendants Cohen or Stapp. Defendant Stapp does have in his possession an original of the January 29, 1988 Payment Guaranty executed by him. Defendants Cohen and Levy have not been able to locate any originals of the January 29, 1988 Payment Guaranties in their possession.

At the time the FDIC was appointed receiver for College Boulevard, College Boulevard did not have in its possession any originals or copies of the October 18, 1988 Payment Guaranties in its files physically located at the bank. However, contained in the files of Kent Perry, attorney for College Boulevard for the Cohen–Esrey loan and the October 18, 1988 modifications thereof, were executed copies of the October 18, 1988 Payment Guaranties for each of the guarantors. These copies of the October 18, 1988 Payment Guaranties were kept in Mr. Perry's files pursuant to his regular course of business. At some point, the originals of the October 18, 1988 Payment Guaranties were delivered to College Boulevard and/or its agent. It would have been Mr. Perry's normal practice to receive the original Payment Guaranties at the loan closing, make a copy of each of the Payment Guaranties, place the copies in his file, and forward the original Payment Guaranties to College Boulevard.

Plaintiff does not have in its possession any originals of the October 18, 1988 Payment Guaranties. Plaintiff does have executed copies of the October 18, 1988 Payment Guaranties in its possession which were obtained from Mr. Perry's file. Defendant Lacy has in his possession an original of the October 18, 1988 Payment Guaranty he executed. Defendants Cohen and Stapp do not have in their possession originals of the October 18, 1988 Payment Guaranties.

### III. Summary Judgment Standards

A motion for summary judgment gives a judge an initial opportunity to assess the need for a trial without weighing the evidence or determining credibility. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. at 2512.

The party who files a motion for summary judgment has the initial burden of demonstrating the absence of a genuine issue of material facts concerning its claims. This burden may be met by showing that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the

4. Apparently, duplicate originals of the Payment   Guaranties were made.

nonmoving party to show that there is a genuine issue of material fact left for trial. *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514. The nonmoving party may not simply rest on its pleadings in the case but has the affirmative duty to come forward with facts to establish that a genuine issue exists necessitating a trial in the case. *Id.* Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.* The court must consider the record in the light most favorable to the party opposing the motion. *Bee v. Greaves,* 744 F.2d 1387, 1396 (10th Cir.1984), *cert. denied,* 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985). More than a "disfavored procedural shortcut," summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1." *Celotex,* 477 U.S. at 327, 106 S.Ct. at 2555.

### IV. Discussion

#### A. The Cohen–Esrey Loan

Defendants do not dispute that plaintiff Premier Bank is entitled to judgment against Cohen–Esrey on the promissory notes or that plaintiff's interest in the real estate described in exhibit A–1 to the Modification of the Mortgage is superior to any interest Arapaho I, L.P. and 135–150 Development Company may have in the subject property. Furthermore, defendants admit that as of March 22, 1994, $1,777,239.71 was due and owing in principal and accrued interest on the subject loan and its modifications, and that interest is accruing from that date at the rate of $432.281237 per day.

Because the defendants do not dispute that plaintiff is entitled to judgment on the promissory note, the amount due under the promissory note, or plaintiff's superior lien position as to the subject property, the court will grant plaintiff's motion for summary judgment as to those claims against Cohen–Esrey.

#### B. The Payment Guaranties

■ The only issue remaining before the court is whether plaintiff is entitled to summary judgment on its claims against the guarantors on the January and October Payment Guaranties.[5] Plaintiff argues that 12 U.S.C. § 1823(e) bars the guarantors' attempted use of the affirmative defenses of cancellation and release of the January Payment Guaranties and abandonment of the October Payment Guaranties[6]. Defendants, on the other hand, argue that 12 U.S.C. § 1823(e) is not applicable because in both cases their affirmative defenses served to extinguish the Payment Guaranties prior to the FDIC's takeover of College Boulevard. Therefore, defendants contend that the Payment Guaranties were not "assets" acquired by the FDIC when it became receiver for the bank, and therefore 12 U.S.C. § 1823(e) does not apply.

In *D'Oench, Duhme & Co., Inc. v. Federal Deposit Ins. Corp.,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), the Supreme Court held as a matter of federal common law that the FDIC could assert the defense of estoppel to bar a party's claim based on an alleged agreement which does not appear in the bank's records. *Id.* at 461, 62 S.Ct. at 681. The Court reasoned that by preventing a

**5.** In the court's Memorandum and Order dated March 17, 1994, denying defendants' motion for summary judgment, the court indicated that it did not believe plaintiff could rely on 12 U.S.C. § 1823(e) to pursue claims on both the January 29, 1988 and October 18, 1988 Payment Guaranties. The basis for the court's belief was that, assuming the October 18, 1988 Payment Guaranties were valid, any cancellation of the January 29, 1988 Payment Guaranties would not "diminish or defeat the interest of the Corporation in any asset," as required by 12 U.S.C. § 1823(e), due to the fact that the January 29, 1988 Payment Guaranties would be fully encompassed by the October 18, 1988 Payment Guaranties. Plaintiff has continued to pursue its claim on the

January 29, 1988 Payment Guaranties because, it argues, if for some reason the October 18, 1988 Payment Guaranties are found to be invalid, then plaintiff could rely on 12 U.S.C. § 1823(e) as to the January 29, 1988 Payment Guaranties, because any release of the January 29, 1988 would diminish or defeat the interest of plaintiff in an asset.

**6.** The protections afforded the FDIC under 12 U.S.C. § 1823(e) extend to plaintiff Premier Bank, the FDIC's transferee. See *Castleglen, Inc. v./Resolution Trust Corp.,* 984 F.2d 1571, 1578 (10th Cir.1993).

party from suing on an agreement not within the bank's records, a "secret agreement," the FDIC could properly rely on the bank's records to regulate and protect the fiscal stability of the institution. *Id.* at 457, 62 S.Ct. at 679.

Congress later codified *D'Oench* as applied to the FDIC in 12 U.S.C. § 1823(e), which states in pertinent part:

No agreement which tends to diminish or defeat the interest of the Corporation (FDIC) in any asset acquired by it under this section ... shall be valid against the Corporation unless such agreement (1) is in writing, (2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution, (3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) has been, continuously, from the time of its execution, an official record of the depository institution.

Defendants Cohen, Lacy and Stapp argue that section 1823(e) does not apply to their affirmative defenses in this case because the bank's release of the January 29, 1988 Payment Guaranties and abandonment of the October 18, 1988 Payment Guaranties served to extinguish those guaranties. Therefore, the Payment Guaranties were not "assets" of the bank acquired by the FDIC as required for section 1823(e) to apply.

The seminal opinion on the "no asset" exception is the Eleventh Circuit's in *Federal Deposit Ins. Corp. v. Merchants Nat. Bank of Mobile*, 725 F.2d 634, 639 (11th Cir.), *cert. denied*, 469 U.S. 829, 105 S.Ct. 114, 83 L.Ed.2d 57 (1984). In *Merchants*, the borrower sought to limit the scope of the obligation described in the loan documents by asserting that an ambiguity existed, then resolving the ambiguity by resorting to documents which did not comply with section 1823(e). While holding that the documents proffered in support of the defense were barred because they failed to meet the requirements of section 1823(e), the court noted a limited exception to section 1823(e) when an asset is invalid for fraud or breach of bilateral obligations contained in it. The court stated that "[i]n such cases the parties contend that no asset exists or an asset is invalid and that such invalidity is caused by acts independent of any understanding or side agreement." *Id.* at 639.

Other circuits, when faced with the "no asset" exception, have generally found that where a defendant is forced to rely on evidence that fails to comply with section 1823(e), the exception does not apply. The First Circuit was faced with this "no asset" argument under similar factual circumstances to the present case in *Federal Deposit Ins. Corp. v. P.L.M. Intern., Inc.*, 834 F.2d 248 (1st Cir.1987). In *P.L.M.*, the defendants signed a letter of continuing guarantee as part of a real estate loan transaction. Following several modifications of the original loan transaction, the bank and defendants executed an agreement releasing the defendants from all obligations in relation to the development. Subsequently, the loan went into default. At a later point, the FDIC was appointed as receiver for the bank and sought to enforce the continuing letter of guarantee executed by the defendants. *Id.* at 250.

Defendants argued that the release relieved them from all liability. They contended that local law applied to the letter of guaranty and the subsequent release; that said release was valid under the laws of Puerto Rico; and that they could assert the release as a defense to the FDIC action. *Id.* at 252. The FDIC argued that federal law applied and that the release was invalid under the Federal Deposit Insurance Act. *Id.* The court found that federal law applied and concluded that the release was not valid against the FDIC because it failed to satisfy three of the four requirements under 12 U.S.C. § 1823(e).[7] *Id.* at 253.

The defendants in *P.L.M.* made the argument, as defendants do in the present case, that section 1823(e) had no application in the

7. The release satisfied the requirement under section 1823(e) that the agreement be in writing. However, it failed to satisfy the contemporaneous, approval, or official record requirements.

case because the asset in question, the letter of guaranty, ceased to exist before its acquisition by the FDIC. The court rejected defendants' argument, finding that the case at bar fell squarely within the ambit of section 1823(e). The court stated that:

> Defendants seek to avoid liability under the guaranty agreement by asserting the validity of a nonconforming release: a side agreement of which the FDIC had no knowledge until seven months after its acquisition of the principal asset. To permit the defendants to use the release agreement defensively to define the contours of the asset in question would ... "drain substantial vitality from section 1823(e)" and thereby undercut the purpose of the statute.

*Id.* at 254.

*Federal Deposit Ins. Corp. v. Zook Bros. Const. Co.,* 973 F.2d 1448 (9th Cir.1992) involved a guaranty executed by a defendant on a corporate loan. Subsequent to the execution of the guaranty, the loan was materially altered without the defendant's consent. The district court found that under Illinois law, defendant had been released from her obligations under the guaranty and declined to enforce it. On appeal, the FDIC argued that section 1823(e) applied. The defendant, on the other hand, urged that she was entitled to assert material alteration, and novation, against the FDIC because, by operation of Illinois law, defendant was off the hook before her guaranty was acquired by the FDIC. According to defendant, the FDIC took "no asset," and neither section 1823(e) nor *D'Oench* applied. *Id.* at 1452.

The Ninth Circuit reversed the district court's holding, finding that there was no basis for invoking the "no asset exception" because defendant's defenses depended on proving an implied agreement between herself and the bank that was belied by the presence of the guaranty in the bank's file. In reaching its decision, the court stated:

> We conclude that federal law governs this action by the FDIC on a continuing guaranty in the loan files of a bank whose assets were assigned to it. Federal law requires enforcement of the guaranty because the FDIC under *D'Oench* and § 1823(e) is entitled to rely on documents in a loan file, and there is no basis for Zook's defenses based on state law as they depend on inferences contravening the guaranty which are raised, and may be proved, only by reference to documents which do not meet the requirements of § 1823(e).

*Id.* at 1453.

In *Beighley v. Federal Deposit Ins. Corp.,* 868 F.2d 776 (5th Cir.1989), the borrower contended that the bank agreed to finance a third party purchase of collateral property at the same time a renewal note was executed to consolidate and reduce Beighley's total indebtedness, and that its failure to fund the purchase precluded the FDIC from enforcing the note. Beighley introduced numerous documents to show there was such an agreement. Affirming summary judgment in favor of the FDIC, the court emphasized that not a single document stated in writing that the bank agreed to finance purchase of the property, and that inferences which could be drawn from the bank's cooperation in Beighley's efforts to sell the property did not meet the requirements of section 1823(e). *Id.* at 783–84.

Although the weight of authority in other circuits is decidedly against them, defendants Cohen, Lacy and Stapp argue that a line of cases from this district and the Tenth Circuit support their assertion that section 1823(e) should not apply to their defenses of release and abandonment in this case. Defendants first direct the court's attention to *Federal Deposit Ins. Corp. v. Nemecek,* 641 F.Supp. 740 (D.Kan.1986). In *Nemecek,* the bank brought a suit against defendants in state court to obtain judgment on a promissory note on which the defendants were in default. Prior to the FDIC being appointed as receiver for the bank, the bank and defendants, through their respective lawyers, agreed to a settlement whereby the bank would accept quitclaim deeds for the mortgaged property in lieu of foreclosing and seeking a deficiency. The quitclaim deeds were thereafter delivered to the bank's lawyers by the defendants. Following its appointment as receiver, the FDIC was substituted as plaintiff in the bank's suit against the defendants. The

defendants filed a motion to enforce the settlement agreement. The FDIC opposed the motion, arguing that, pursuant to section 1823(e), it was not bound by any oral agreements which would tend to diminish its interest in any assets acquired by it from the bank. *Id.* at 741.

The court granted summary judgment in favor of the defendants. The court found that the bank and the defendants had reached an accord and satisfaction, a settlement of claims, prior to the bank closing. Therefore, when the FDIC purchased the bank's assets, it could not have purchased defendant's note, as it had been previously extinguished. The court stated that section 1823(e) applied "only to assets which the FDIC *has* acquired." *Id.* at 743.

The holding in *Nemecek* was subsequently expressly rejected by a different judge of this court in *Federal Deposit Ins. Corp. v. Cover,* 714 F.Supp. 455 (D.Kan.1988). In *Cover,* the defendants contended that the bank orally agreed that it would not seek any deficiency judgment against them if defendants would sell their farm machinery and equipment and apply the proceeds to their indebtedness owed the bank. Defendants subsequently liquidated their operations and applied the proceeds to the debt owed the bank. It was uncontested that the agreement upon which defendants relied was not in writing, and that defendants had failed to comply with the writing, approval and filing requirements of section 1823(e). However, defendants asserted that section 1823(e) was not applicable because no "asset" had been acquired by the corporation when it purchased the failed bank's interest. *Id.* at 457. The court was presented with the issue of whether the defense of oral accord and satisfaction between the debtors and the failed bank was barred by 12 U.S.C. § 1823(e).

The *Cover* court held that the defense of oral accord and satisfaction was barred by section 1823(e), stating:

The court declines to follow the *Nemecek* holding. That rationale requires the court to, in a preliminary step, look to evidence not permitted by § 1823(e) to determine the FDIC's rights with respect to each item reflected in a failed bank's books as an asset and purchased by the corporation. Such a theory would destroy the effect and protection of § 1823(e) and hamper the FDIC's ability to follow the purchase and assumption alternative by injecting uncertainty into the valuation of assets.

*Id.* at 458.

Defendants argue that *Nemecek* represents the correct view, asserting that the Tenth Circuit's holding in *Grubb v. Federal Deposit Ins. Corp.,* 868 F.2d 1151 (10th Cir. 1989) implicitly rejected the holding in *Cover.* In *Grubb,* the Tenth Circuit held that section 1823(e) did not bar the plaintiffs' fraud claims and defenses because a previous district court judgment had voided the notes that were at issue. The court concluded that the judgment provided the FDIC with a reliable record indicating that the notes were void and, therefore, the *D'Oench* doctrine did not apply. *Id.* at 1159.

Defendants argue that the *Grubb* holding should not be limited to instances where a judgment has been entered against a bank prior to the time the financial institution was placed under regulatory control. However, other courts have done so. *See Torke v. Federal Deposit Ins. Corp.,* 761 F.Supp. 754, 757 (D.Colo.1991). Based on a careful reading of *Grubb,* this court agrees with *Torke* that *Grubb* is so limited. In *Grubb,* the court placed heavy reliance on the fact that, since a judgment already existed when the FDIC purchased the bank's assets, the purposes of section 1823(e) were not vitiated because the judgment provided the FDIC a reliable record indicating that the notes were void, and collusion between *Grubb* and the bank seemed highly unlikely because the parties had fully and heatedly litigated the securities fraud issue to judgment before the bank failed.[8] *See Grubb,* 868 F.2d at 1159. In the

---

8. In *Grubb,* the court cited *Nemecek,* along with several other cases, for the proposition that section 1823(e) does not apply if an asset has been "voided" prior to its acquisition by the FDIC. Defendants argue that the Tenth Circuit's use of

*Nemecek* in this string cite should be interpreted as an acceptance of the *Nemecek* holding by the circuit court. This court does not agree. *Nemecek* is not mentioned by the circuit court during its analysis in *Grubb* of how the purposes of

present case, where defendants urge that oral negotiations and other evidence not in compliance with section 1823(e) should be allowed to determine whether the Payment Guaranties had been abandoned, no reliable record exists which the FDIC could rely on. Additionally, the court believes that its conclusion that *Grubb* is limited to situations where a judgment has been entered is further strengthened by the Tenth Circuit's later holding in *Castleglen, Inc. v. Resolution Trust Corp.*, 984 F.2d 1571 (10th Cir.1993), in which the court stated that *"Grubb* held that *when a judgment for damages* grounded on misrepresentation *had been entered* earlier against a bank with the effect of invalidating notes held by the bank, the subsequent takeover of the institution by the FDIC *did not reverse the earlier judgment* or resuscitate the assets which had already been voided." *Id.* at 1578 (emphasis added).

In order to establish that the plaintiff in this case abandoned the October 18, 1988 Payment Guaranties, it would be necessary for defendants to show actual relinquishment accompanied by an intention to abandon. *See Botkin v. Kickapoo, Inc.*, 211 Kan. 107, 505 P.2d 749 (1973). Plaintiff has asserted that there are no written records in the bank files indicating any intention by the bank to abandon the October 18, 1988 Payment Guaranties, nor have defendants presented the court with any such documents. Accordingly, the only way for defendants to establish their affirmative defense of abandonment as regards the October 18, 1988 Payment Guaranties would be through oral communications and other evidence not in compliance with section 1823(e). Based on the court's analysis above, the court finds that defendants would be prohibited from relying on any such evidence. Defendants are therefore barred

by section 1823(e) from asserting that the October 18, 1988 Payment Guaranties were abandoned by plaintiff.

■ Defendants make an additional argument that due to the fact that the bank did not have possession of the original October 18, 1988 Payment Guaranties at the time the FDIC took over the bank as receiver, plaintiff has failed to establish the fact that it in fact acquired the Payment Guaranties at that time. The court finds no merit to this argument. It is undisputed that the original October 18, 1988 Payment Guaranties were executed and delivered by the defendants to College Boulevard and/or its agent. Delivery to one's agent constitutes delivery to the principal, *Bryan v. Bartlett,* 435 F.2d 28, 33 (8th Cir.1970), and likewise possession by one's agent constitutes possession by the principal. It is further undisputed that executed copies of the October 18, 1988 Payment Guaranties were located in the files of Kent Perry, attorney for College Boulevard for the Cohen–Esrey loan, and that the Payment Guaranties were kept in Mr. Perry's files in the regular course of business. The court believes that the existence of the executed copies in the files of College Boulevard's agent, Mr. Perry, resulted in their acquisition by the FDIC when it became receiver for College Boulevard.[9]

The court finds that the October 18, 1988 Payment Guaranties were validly executed, that they were acquired by the FDIC when it became receiver for College Boulevard, and that defendants are barred by Section 1823(e) from asserting that they were abandoned by plaintiff. Accordingly, the court grants summary judgment in favor of the plaintiff on its claims against defendants Co-

section 1823(e) are not vitiated due to the fact that the judgment provides the FDIC with a reliable record that the notes were void. *Grubb,* 868 F.2d at 1159. The *Nemecek* holding runs contrary to this expressed concern of the *Grubb* court. This court believes that if the Tenth Circuit analyzed *Nemecek* in light of those concerns, it would reject *Nemecek.*

**9.** The court believes the fact that plaintiff has only executed copies of the October 18, 1988 Payment Guaranties, as opposed to the originals, is irrelevant to the issue of the enforceability of

the Payment Guaranties against the defendants. Defendants have produced no authority, nor does the court believe it is the law, that an individual possessing an executed copy of a guaranty cannot pursue a guarantor due solely to the fact the individual does not possess the original guaranty. The Federal Rules of Evidence would certainly permit the introduction of the executed copies at trial, based on the record here, and the court finds them sufficient. See Fed.R. of Evid. 1001, et seq.

hen, Lacy and Stapp based on the October 18, 1988 Payment Guaranties.[10]

### C. Defendants' Motion to Strike

■ In their motion to strike, defendants move the court for an order striking paragraph 14 of the plaintiff's statement of undisputed material facts contained in its memorandum in support of plaintiff's motion for summary judgment, and striking paragraph 7 of the affidavit of Gerard Wordell. Paragraph 14 of the plaintiff's statement of material facts merely states that "[d]efendants Cohen, Lacy and Stapp have not satisfied their obligations under the October 18, 1988 Payment Guaranties." Defendants argue that the paragraph "fails to comply with Rule 206(c) of the Local Rules for the U.S. District Court of Kansas as it fails to refer to any portion of the record upon which plaintiff relies to support said statement." The court agrees with defendants that, technically, the paragraph is in violation of the Local Rule. However, given that the defendants have admitted that the loan is in default, and that they deny any liability under the October 18, 1988 Payment Guaranties, it is obvious to all involved that the statement is correct. Accordingly, defendants' motion to strike the statement is denied.

Paragraph 18 of plaintiff's statement of undisputed material facts contains the statement that "[n]o writing is contained in the bank files of College Boulevard which reflects an agreement to release Cohen, Lacy or Stapp from personal liability on the January 29, 1988 Payment Guaranties or on the October 18, 1988 Payment Guaranties." In support of this statement, plaintiff refers to paragraph 7 of the affidavit of Gerard Wordell. Gerard Wordell is the account officer for the FDIC on the Cohen–Esrey loan. Defendants contend that the statement should be stricken due to the fact that Mr. Wordell lacks personal knowledge of said fact because

he failed to exhaustively review other bank files in addition to those files dealing specifically with the Cohen–Esrey loan. The court does not believe this sufficient to strike the statement. Rather, the court accepts the statement for what it is, that being that no written documents of such a sort were contained in the Cohen–Esrey files.

### D. Defendant's Motion for Leave to File a Sur-reply

In their motion for leave to file a sur-reply, defendants contend that plaintiff Premier Bank, in its reply, contradicts an express stipulation that was agreed to by defendants and the FDIC which is contained in the pre-trial order. Defendants contend that Premier Bank is bound by any stipulations entered into between defendants and the FDIC, and defendants seek leave to file a sur-reply as to that issue. The court has reviewed the factual assertion made by plaintiff in its reply and finds that the disputed assertion is not material to the court's summary judgment decision. Accordingly, defendant's motion for leave to file a sur-reply is denied.

### V. Conclusion

**IT IS, THEREFORE, BY THE COURT ORDERED THAT** plaintiff's motion for summary judgment (Doc. # 80) is granted as to the breach of contract and foreclosure claims against Cohen–Esrey and as to the October 18, 1988 Payment Guaranty claims against defendants Cohen, Lacy and Stapp.

**IT IS FURTHER ORDERED THAT** plaintiff shall submit a proposed order of judgment to the court on or before July 25, 1994. Defendants shall be given until August 4, 1994 to file any objections to the proposed form of judgment, following which time the court shall enter its judgment order.

**IT IS FURTHER ORDERED THAT** defendant's motion to strike (Doc. # 100) is denied.

---

**10.** As to the January 29, 1988 Payment Guaranties, the court finds that plaintiff's right of recovery under those guaranties is fully encompassed by the October 18, 1988 Payment Guaranties. Because the January 29, 1988 Payment Guaranties afford plaintiff no additional relief, the court finds it unnecessary to rule on them here. The court does note, however, that in the event the

court had accepted defendants' argument that the FDIC did not acquire the October 18, 1988 Payment Guaranties at the time it became receiver, Section 1823(e) would apply to defendants' recission defense as regards the January 29, 1988 Payment Guaranties and plaintiff would have been entitled to summary judgment on those guaranties.

**IT IS FURTHER ORDERED THAT** defendant's motion for leave to file a sur-reply (Doc. # 104) is denied.

**IT IS SO ORDERED.**